WHALE OIL COMPANY, INC., Claimant, *v.* STATE OF NEW YORK, Defendant.

(Motion No. 924.)

Court of Claims, June 2, 1943.

*Abraham L. Doris* for claimant.

*Nathaniel L. Goldstein, Attorney-General (Mortimer H. Michaels* of counsel), for defendant.

GREENBERG, J. Claimant moves herein for leave to file a claim, pursuant to subdivision 5 of section 10 of the Court of Claims Act. (L. 1939, ch. 860.) A reasonable excuse for the failure to file the claim or notice of intention within the statutory period has been offered. However, the proposed claim is under attack and question is raised as to the sufficiency thereof.

The claim herein alleges: On June 4, 1941, a contract was made by the claimant with the State for the delivery of No. 6 fuel oil to the Brooklyn State Hospital and the State Office Building at New York City, at the agreed and fixed price of 3.798 cents per gallon; the contract was renewed on November 5, 1941, for delivery of additional quantities of said fuel oil during the period from January 1, 1942, to June 30, 1942; that claimant performed and carried out the contract and the renewal agreement in accordance with the terms thereof; war was declared by the United States on December 7, 1941, and that thereafter in March, 1942, the Oil Petroleum Coordinator of the United States issued an order directing all companies supplying oil to pool all transit facilities, and that by the terms of such directive, all oil companies, including the claimant were obliged to ship same by tank cars and pipe lines instead of steamship tanks at a greater cost than had been contemplated when making the contract; that on or about March 25, 1942, the Office of Price Administration approved an increase in freight charges on all methods of delivery of twenty cents per forty-two-gallon barrel of said fuel oil, and thereafter on April 30, 1942, the said Office of Price Administration approved a further increase in the freight charges for delivery of said oil of twenty-five cents on each forty-two-gallon barrel, and as a result, claimant was obliged to pay to the oil refineries 1.076 cents per gallon for additional freight.

It was further alleged that the increase in the aforesaid freight rates arose out of different methods of shipment not contemplated in the terms of the contract, and because of the war and in furtherance of the war effort. That while this condition prevailed, and promptly after the Office of Price Administration approved the increase in freight rates, the claimant, through its president, notified the Commissioner of Standards and Purchase of the State of New York of all of the foregoing circumstances, and that claimant could not proceed with further deliveries under said contract excepting at a substantial loss to it, whereupon, on the 25th day of March, 1942, the said Commissioner of Standards and Purchase promised that the claimant would be reimbursed by the State for the differentials in the freight rates as fixed by the Office of Price Administration. That during all this time an emergency existed, and continued throughout the contract period, and that the institutions of the State, to which the claimant was to deliver the oil, could not obtain such oil from other sources. That in reliance upon the promise of the Commissioner of Standards and Purchase, the claimant proceeded with the delivery of oil, as provided for in the contract, and incurred and paid the differentials in the freight rates in the sum of $3,473.93, which sum it now seeks to recover.

There was no consideration for the alleged promise to pay the increased cost of transportation of the oil delivered under the contract. The agreement specifically provided and fixed the price to be paid for said oil, and claimant was obligated thereunder to make delivery at said price. " Having entered into the contract, claimant became legally and equitably bound to discharge the obligation assumed by him, however onerous the burden. (*Boret* v. *Vogelstein & Co., Inc.*, 188 App. Div. 605, 611; *Columbus R., P. & L. Co.* v. *City of Columbus*, 249 U. S. 399)." (*Gordon* v. *State*, 233 N. Y. 1, 7.)

Neither the original agreement made by the claimant and the State for the delivery of the oil, nor the extension agreement hereinbefore referred to, were breached by either of the contracting parties thereto, nor were said agreements rescinded. Said contracts were duly performed by claimant delivering the oil and the State paying the agreed price therefor. Under the circumstances there was no consideration for the alleged promise by the State to pay the increased cost of freight. " The efforts of the courts to give a legal reason for holding good a promise to pay an additional compensation for the fulfillment of a pre-existing contract is commented upon in note upon *Abbott*

v. *Doane* (163 Mass. 433) in 34 L. R. A. 33, 39, and the result reached is stated as follows: ' The almost universal rule is that without any express rescission of the old contract, the promise is made simply for additional compensation, making the new promise a mere *nudum pactum.'* " (*Schwartzreich* v. *Bauman-Basch, Inc.*, 231 N. Y. 196, 204.)

The " saving clause " in the contract, which is referred to in the motion papers, and which was submitted herein as part of same by agreement of counsel, does not aid the claimant. It does not undertake to indemnify the claimant against loss upon its contract. It simply relieves the claimant from responsibility for losses resulting from delays in the fulfillment of the terms of the contract because of war, et cetera.

This claim is also founded upon equity and justice. The proposed claim alleges that the agreements were entered into when war was not contemplated and that the damage sustained by the claimant arose from the abnormal conditions resulting from the war which subsequently developed, thus creating a moral obligation on the part of the State for the damages sustained by the claimant. However, equity and justice do not require the State to reimburse claimant for the increased expense incurred by him in the performance of a contract due in no measure to the act of the State. (*Gordon* v. *State, supra.*) While claimant's position may be unfortunate and is regrettable, the facts pleaded in the proposed claim herein fail to allege a cause of action against the State over which this court possesses jurisdiction.

Claimant having failed in its proposed claim to plead a cause of action against the State, upon the authority of *Apropo* v. *State*, 161 Misc. 142, affd. 252 App. Div. 803, and *Chergotis* v. *State*, 172 Misc. 272, affd. 259 App. Div. 369, the motion herein is denied.